**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. CR-1-02-0023-003** |
| Plaintiff, | **UNITED STATES DISTRICT JUDGE SANDRA S. BECKWITH** |
| vs. | |
| **ROBERT SCHNEIDER** | **SENTENCING MEMORANDUM** |
| Defendant. | |

_____

Now comes the Defendant, **ROBERT SCHNEIDER**, by and through his attorneys, **RION, RION & RION, L.P.A., INC.**, and respectfully submits the following sentencing memorandum in the above-captioned case.

A Memorandum in support is attached hereto.

Respectfully submitted,

**/s/ JOHN H. RION**
**JOHN H. RION (#0002228)**
**JON PAUL RION (#0067020) of**
**RION, RION AND RION, L.P.A., INC.**
P.O. Box 10126
Dayton, Ohio  45402
(937) 223-9133

CH

## **CERTIFICATE OF SERVICE**

    I, the undersigned, do hereby certify that a copy of the foregoing was sent to the office of Robert C. Brichler, Assistant United States Attorney, 221 East Fourth Street, Suite 400, Cincinnati, Ohio 45202on the same day of filing.

_____
**JOHN H. RION of
RION, RION & RION, L.P.A., INC.**

**MEMORANDUM IN SUPPORT**

**MAY IT PLEASE THE COURT:**

For clarity, Mr. Schneider will present a summary of the case as set forth in the Pre-Sentence Report. On March 11, 2002, James Reak was driving in Arizona with 700 pounds of marijuana when Arizona authorities came upon him. Reak had been hired by co-defendant Kapp to drive the marijuana from Arizona to Ohio. Reak cooperated with the authorities, and agreed to continue driving the marijuana to Mr. Schneider in Ohio. On March 13, 2002, Mr. Schneider and co-defendant Hartman drove to Cincinnati to meet Reak. Mr. Schneider brought $10,000 to pay Reak. Schneider and Hartman were arrested in Cincinnati.

Schneider and Hartman had been friends since they were in elementary school. Hartman's involvement consisted of helping Mr. Schneider pick up the delivery in Cincinnati. Hartman had done this twice before, and Appellant paid him $5000 per trip. They would then transport the marijuana back to Dayton, where it was stored in Mr. Schneider's house.

Pursuant to a plea agreement, Mr. Schneider entered a guilty plea to conspiracy to distribute marijuana in an amount over 1000 kilograms. The Pre-Sentence Report suggested that he receive an enhancement for his alleged ringleader role in the offense. Despite Mr. Schneider's objection, the trial court accepted the suggestion and imposed a sentence of 57 months imprisonment. On appeal, the Sixth Circuit affirmed the trial court's sentence, but the Supreme Court vacated that decision and remanded the cause to the Sixth Circuit, who then remanded the case to this Court for further consideration in light of recent changes in

CH

federal sentencing law.

When it originally imposed sentence, this Court added an additional two points under U.S.S.G. sec. 3B1.1©). That section calls for the imposition of an additional two points "if the defendant was an organizer, leader, manager or supervisor in any criminal activity . . ." To support that sentencing factor, the Court noted that the PSR stated that co-defendant Hartman had indicated that Mr. Schneider called upon Hartman to safeguard the drug proceeds and to act as his chauffeur. The court noted further that Mr. Schneider received the "lion's share" of the proceeds and that Hartman received only "small sums." Thus, the court concluded that Hartman was Mr. Schneider's employee and that Mr. Schneider was in fact a manager. Mr. Schneider objected to the imposition of the enhancement and maintains that he did not play a managerial role in this offense and further that such a determination and resulting increase in his sentence violates his Sixth Amendment right to trial by jury.

The sentencing guidelines do not define the terms, "organizer," "leader," "manager," or "supervisor." However, the guidelines do set out a number of factors that a court should consider when evaluating whether this enhancement should apply in a particular case. These factors include: a) the exercise of decision-making authority; b) the nature of participation in the commission of the offense; c) the recruitment of accomplices; d) the claimed right to a larger share of the fruits of the crime; e) the degree of participation in planning or organizing the offense; f) the nature and scope of the illegal activity; and g) the degree of control and authority exercised over others. U.S.S.G. sec. 3B1.1 Application Note 4. A background

CH

comment to the guidelines also better explains when this enhancement should or should not be imposed:

> "This adjustment is included primarily because of concerns about relative responsibility. However, it is also likely that persons who exercise a supervisory or managerial role in the commission of an offense tend to profit more from it and present a greater danger to the public and/ or are more likely to recidivate." USSG § 3B1.1, comment. (backg'd.).

A sentence should not be enhanced under this provision unless the defendant led, organized, managed, or supervised at least one other criminally culpable individual. United States v. Caseslorente, supra, 220 F.3d at p. 736. It is not enough that a defendant played an important and crucial role in the offense. Instead, the record must show that he or she exercised managerial control over at least one other participant. United States v. Vandeberg 201 F.3d 805, 811-812 (6th Cir. 2000); United States v. Albers 93 F.3d 1469, 1487 (10th Cir. 1996). Under old Supreme Court jurisprudence on this issue, the government bore the burden of proving this enhancement by a preponderance of the evidence. United States v. Martinez 181 F.3d 794, 797 (6th Cir. 1999).

In addition, the overall concern behind imposing this sentencing factor is with the concept of "relative responsibility." USSG sec. 3B1.1, comment. (backg'd). In this case four people were indicted and convicted. Two lived in Arizona and two, appellant and Hartman, lived in Ohio. There is no suggestion from the PSR that either Snyder or Kapp had any dealings with Hartman. Yet both Snyder and Kapp appeared to be equally involved in the operation with Mr. Schneider. Thus, it would seem that even though Kapp and Snyder were just as involved (if not more involved) in this scheme as Mr. Schneider, they will not be subject to this two point addition by

virtue of the fact that they happened not to have friends assisting them. Mr. Schneider asserts that it is fundamentally unfair that he could receive a potentially longer sentence than his two equally culpable codefendants. And when seen in the context of just Mr. Schneider, Snyder and Kapp, the evidence shows that Mr. Schneider: a) had no more decision making authority then they did; b) had equal if not lesser participation in the offense; c) claimed an equal right to the proceeds; d) had equal participation in planning and organizing the offense; e) had the same nature and scope of activity; and f) exercised equal control or authority. U.S.S.G. sec. 3B1.1 Application Note 4. Thus, with respect to the "relative responsibility" element, Mr. Schneider, Snyder and Keen should be on the same level.

  Further, while it is understandable, in theory, that a person in a managerial role might present a greater danger to the public and might be more likely to recidivate (see USSG sec. 3B1.1, comment. (backg'd)), the chance of either in this case is far less likely. It is not as if appellant went out on the street and recruited and trained a stranger to help him import marijuana, something that might suggest an organizational ability and simply more gall than a "typical" drug trafficker. Instead, Mr. Schneider relied on a trusted friend to help him, in a most minimal way, with his business. Thus, Mr. Schneider submits that this pre-existing friendship fails to suggest any greater danger to the public than typical, and he also submits that it fails to indicate a greater chance of recidivism.

  On June 24, 2004, the United States Supreme Court issued their decision on the case <u>Blakely v. Washington</u>, 542 U.S. \_\_\_\_, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). In that decision, the Supreme Court committed to and expanded upon the

CH

rule set forth in Apprendi v. New Jersey , which stated that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). The Blakely court elaborated on Apprendi by specifically stating that the statutory maximum is the "maximum a judge may impose based solely on the facts reflected in the jury verdict or admitted by the defendant." Blakely, 542 U.S. at ____. Its decision reflects the importance of a person's Sixth Amendment right to trial by jury, to make sure the State proved beyond a reasonable doubt those facts used to convict and sentence a person.

On January 12, 2005, the Supreme Court decided the cases United States v. Booker and United States v. Fanfan. In those cases, the Supreme Court determined that its decision in Blakely applied to the Federal Sentencing Guidelines and that it needed to excise and sever two portion of the Sentencing Guidelines and the Sentencing Reform Act to preserve the rest of the Act while maintaining its constitutionality. In Fanfan's case, the Guidelines operated to increase his sentence by ten years because the Judge found additional facts to support, among other enhancements, that he held a managerial role. The Judge relied on the Blakely decision in concluding that he could not follow the Guidelines with respect to these enhancements and instead sentenced Fanfan only to the sentencing range authorized by the jury's verdict. United States v. Booker, 543 U.S. ____ (2005). The Supreme Court remanded the case so that either side could seek re-sentencing if it so chose. In Booker, the Court fashioned a remedy making the Guidelines only advisory rather than mandatory to prevent the otherwise necessary invalidation of the

entire act. Id.

Mr. Schneider believes that the trial court overlooked the true nature of his and Hartman's relationship. The two men were first and foremost friends, and they had been so since they attended elementary school together. Thus, the fact that Hartman may have helped Mr. Schneider pick up marijuana deliveries, that Hartman was paid for his assistance, and that Mr. Schneider made most of the money, should, Mr. Schneider submits, be seen in the context of that friendship. Mr. Schneider believes that the record better supports the view that this was a case of one friend helping another, and not the "employer/employee" relationship that the trial court seemed to find.

Consistent with the principles set forth in Apprendi and Blakely which were applied to the Guidelines in Booker, this Court should begin the analysis of Mr. Schneider's sentence with a base level of 30 and decline adding the two-point enhancement for holding a leadership role in the offense.  Based upon the plea negotiations, it is clear that neither Mr. Schneider nor the Government intended for Mr. Schneider to receive this enhancement.  Otherwise, the Government would not have specifically stated that it did not object to Mr. Schneider receiving the "safety valve" benefits of 18 U.S.C. 3553(f). (Robert C. Brichler, TR, 5/3/02, p. 14.) That necessarily means that the government did not object to the probation department or the trial court concluding that Mr. Schneider did not play a managerial role in this offense. 18 U.S.C. 3553(f)(4).  Were Mr. Schneider not eligible for that benefit because of his holding a leadership role in this offense, that benefit would never have arisen during the course of plea negotiations.  Rather, both sides contemplated

Mr. Schneider receiving safety valve as part of his overall sentence and that was part of the negotiating process. Further, as stated at sentencing, the Government never even alleged that Mr. Schneider held a leadership role in the commission of this offense. That the PSR contained that finding, even though it was never alleged and was only found by a preponderance of the evidence by a judge during sentencing is exactly the type of occurrence contemplated in <u>Apprendi</u> and its progeny, ending with <u>Booker</u>. Instead of an ultimate Guideline range of 57-71 months imprisonment, Mr. Schneider's sentence would more appropriately be 46-57 months, with a Criminal History Category of I and Offense Level 23.

    Respectfully submitted,

    **/s/ JOHN H. RION**
    **JOHN H. RION**
    **RION, RION & RION L.P.A., INC.**